## KOECHL & CO. *v.* UNITED STATES (No. 786).[1]

ADEPS LANAE—WOOL GREASE.

> Adeps lanae, or lanolin, is used as a basis for ointments and as a carrier for soluble medicinal salts, and the evidence shows that without the addition of medicinal agents it has no therapeutic value. The more specific provision levying duty upon it is to be found in paragraph 290, tariff act of 1909. It is dutiable under that paragraph as wool grease refined or improved in value or condition.

## United States Court of Customs Appeals, May 31, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26810 (T. D. 31912).

[Reversed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

A product returned by the appraiser at the port of New York as wool grease was classified by the collector of customs as a medicinal preparation, dutiable at 25 per cent ad valorem under the provisions of paragraph 65 of the tariff act of August 5, 1909, of which paragraph the part material to this case reads as follows:

65. \* \* \* All other medicinal preparations not specially provided for in this section, twenty-five per centum ad valorem.

In due time the importers protested against the classification of the goods and the duties assessed thereon by the collector and set up the claim that the merchandise was either refined wool grease, dutiable at one-half of 1 cent per pound within the meaning of paragraph 290 of said act, or that it was an unenumerated manufactured article dutiable as provided for in paragraph 480. The paragraphs relied upon by the importers are as follows:

290. Tallow, one-half of one cent per pound; wool grease, including that known commercially as degras or brown wool grease, crude and not refined, or improved in value or condition, one-fourth of one cent per pound; refined, or improved in value or condition, and not specially provided for in this section, one-half of one cent per pound.

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

The merchandise involved in the controversy is known to the Pharmacopoeia and the Dispensatory as adeps lanae, which is the scientific designation and Latin equivalent for "wool grease." Hydrous adeps lanae is that which carries water in suspension and anhydrous that from which all water has been expelled. Wool grease is the fatty substance which results from the washing of the wool. This fatty

---

[1] Reported in T. D. 32619 (22 Treas. Dec., 1039).

substance, just as it comes from the wool, contains some free potash and is mixed with dirt, water, and other foreign matter derived from the substances employed as cleansing materials. The mixture is drawn off into tanks and when relieved of the dirt, excess water, and alkalies derived from the agencies used in washing the wool, it becomes degras or raw wool grease, which normally contains some fatty acids and free potash. Raw or crude wool grease is used for stuffing leather and for the manufacture of lubricating greases.

When degras or raw wool grease has been freed of the uncombined alkalies and fatty acids normally found in it, it is denominated "neutral wool grease." Neutral wool grease is used for the making of soap, the manufacture of paints, and the compounding of cylinder and machinery oils of the finer quality. If the cleansing and refining of the degras or crude wool grease proceeds so far as to leave no perceptible odor of wool and absolutely no uncombined alkalies or fatty acids, the product takes on the scientific name of adeps lanae or is given by the manufacturers some fanciful proprietary designation such as lanae, lanam, or lanolin. Adeps lanae, lanam, lanae, or lanolin, is used by the pharmacist as a basis for ointments and as a carrier for soluble medicinal salts. When applied to the skin it renders the tissues soft and pliable and serves the purpose of an emollient.

On this state of facts the Government argues that adeps lanae is a medicinal preparation within the meaning of the present tariff act, and therefore dutiable as assessed. In support of its contention the Government points out that hydrous adeps lanae and lanolin are different designations for the same thing, and that lanolin has been uniformly held to be a medicinal preparation by the Board of General Appraisers and the courts. *In re* Movius & Son (T. D. 11215, decided in 1891, under the tariff act of 1883); Movius & Son *v.* United States (66 Fed. Rep., 734, decided in 1895, under the tariff act of 1890); *In re* Movius & Son (T. D. 17075, decided in 1896, under the tariff act of 1894); *In re* Soltau (T. D. 21943, decided in 1900, under the tariff act of 1897); *In re* Koechl & Co. (T. D. 25910, decided in 1904, under the tariff act of 1897); Zinkheisen *v.* United States (T. D. 29000, decided by the United States Circuit Court for the Southern District of New York on May 7, 1908, under the tariff act of 1897); Zinkheisen *v.* United States (167 Fed. Rep., 312, decided in 1909, under the tariff act of 1897).

In considering all these cases and what was finally settled by them some account must be taken of the law as it then stood and of the processes of reasoning by which the conclusion was reached. Proprietary preparations were provided for by name under paragraph 99 of the tariff act of 1883, and among those specifically designated were—

Preparations or compositions recommended to the public as proprietary articles, or prepared according to some private formula, as remedies or specifics for any disease or diseases, or affections whatever, affecting the human or animal body.

Paragraph 99 was not reenacted in the tariff act of 1890, but care was taken to provide for medicinal *proprietary* preparations (nonalcoholic) in paragraph 75 thereof. Lanolin was originally a preparation patented in the United States by Dr. Otto Braun and Dr. Oscar Lieberich, of Berlin, Germany. This preparation was described by the patentees in the specifications of their letters patent as "a new manufacture of fatty matter from wool fat, * * * and as a compound of clean wool fat with water." (T. D. 11215.) It was put up in 1-pound tins, and held out to the world as a remedy for catarrh, as a cure for the cracking or excoriation of the skin, as a means of alleviating pain, and as an aid favoring the formation of fresh epidermis. (T. D. 11215.) Accordingly, the Board of General Appraisers, in the first Movius case (T. D. 11215), held that lanolin was a proprietary preparation, dutiable under paragraph 99 of the tariff act of 1883. With the same merchandise before it, the Circuit Court for the Southern District of New York held that lanolin imported under the tariff act of 1890 and found by the board to be a medicinal *proprietary* preparation was dutiable as such under paragraph 75 of that act. Movius v. United States (66 Fed. Rep., 734). The same finding was made *In re* Movius & Son (T. D. 17075).

In neither of these cases was any question raised as to whether lanolin by itself really possessed any therapeutic value and all three of them were apparently decided on the assumed or admitted fact that lanolin was held out to the public and claimed by its manufacturers to be a patented article for the relief of pain and the cure of disease. In the cases subsequently decided the importers seemingly raised no issue as to the therapeutic qualities of the merchandise, but endeavored to secure the admission of it as wool grease, or as rendered oil, or as something other than lanolin and bearing a different name. This the board and the courts would not permit, and just as often as the issue was presented it was held that wool grease, freed of dirt, water, alkalies, and fatty acids was lanolin and therefore subject to the rule laid down in Movius & Son v. United States (66 Fed. Rep., 734). No account was taken of the fact that medicinal preparations and medicinal proprietary preparations had been struck out of the tariff acts of 1894 and 1897. The board and the courts simply found that adeps lanae, lanam, or lanae which resulted from the cleansing and purifying of crude wool grease was of the same character as lanolin, and as lanolin purported to possess therapeutic properties it was quite natural, in the absence of anything to the contrary, to conclude that the goods were, at least prima facie, medicinal preparations. In this case, however, the merchandise not only does not purport to be a medicinal preparation, but the testimony of Dr. Wainwright, a witness who is a pharmacist, a graduate in chemistry,

a graduate in medicine, and who was.formerly a practicing physician, shows that the merchandise has, properly speaking, no medicinal properties whatever. Dr. Wainwright testified positively that adeps lanae was used as a base for ointments just as was lard, mutton suet, tallow, or vaseline; that it was a mere carrier for soluble medicinal salts; and that without the addition of medicinal agents it had no therapeutic value.

Henry Pfaltz, a witness for the Government, did say that lanolin was used exclusively for medicinal purposes, but as he did not qualify either as a pharmacist or physician, we can not accept his tesimony on the point in lieu of that of a witness who was fully qualified to give an opinion in the matter.

The fact that adeps lanae hydrous and adeps lanae anhydrous are enumerated in the United States Pharmacopœia and in the National Standard Dispensatory is not of and by itself any evidence that the articles mentioned have therapeutical qualities or that they are in truth and in fact medicinal preparations. In the same Pharmacopœia and Dispensatory may be found acids, lard, talc, ammonia, white wax, kaolin, paraffin, sirup, turpentine, and glycerin, all of which enter into the composition of medicinal preparations and medicinal remedies, but which as a matter of common knowledge can not be considered as medicinal preparations in the true sense of the term. We must, therefore, hold that in this case at least it has been established that adeps lanae, whether hydrous or anhydrous, is not by itself a medicinal preparation. But if it were a medicinal preparation, we think it has been more specifically provided for in paragraph 290 of the present tariff act as "wool grease refined or improved in value or condition."

From 1890 until the passage of the present tariff act the provision for wool grease was as follows:

1890.

316. \* \* \* Wool grease, including that known commercially as degras or brown wool grease, one-half of one cent per pound.

1894.

Free List, 645. \* \* \* Wool grease, including that known commercially as degras or brown wool grease.

1897.

279. \* \* \* Wool grease, including that known commercially as degras or brown wool grease, one-half of one cent per pound.

In Movius *v.* United States (66 Fed. Rep., 734), paragraph 316 of the tariff act of 1890 was held to cover crude raw wool grease only. In that case the court took occasion to say that the term wool grease would convey to the mind of every business man familiar with the

subject an idea of a crude raw material, and that in that sense the term "wool grease" was used in paragraph 316.

In the matter of the protest of Koechl & Co. (T. D. 25910), which involved the classification of goods invoiced as refined wool fat, and claimed to be wool grease, the Board of General Appraisers stated that the wool grease provided for in paragraph 279 of the tariff act of 1897 was not the highly finished product imported.

In Zinkheisen v. United States (167 Fed. Rep., 312), Judge Coxe, speaking for the Circuit Court of Appeals, said of the issue then pending:

> The case is stronger for the Government than the Movius case, for the reason that the court prior to the passage of the present act had construed "wool grease" to include only the crude raw material and not the refined and expensive products derived therefrom. With this construction presumably in mind, Congress reenacted the paragraph in identical language. This would hardly have been done if Congress had intended that the refined and expensive "lanolin" should enter as wool grease and pay duty at the rate of only one-half of 1 cent per pound.

From these decisions it is evident that the board and the courts considered that the language "wool grease, including that known commercially as degras or brown wool grease," was directed at the raw crude product, and that the wool grease from which the dirt, free alkalies, and fatty acids had been removed was not within its intention. Congress had all these decisions before it at the time the tariff act of 1909 was passed, and it seems but fair and reasonable to assume that when it made provision for wool grease "refined or improved in value or condition" it did so with the information that wool grease as provided for in the statutes of 1890, 1894, and 1897 had been interpreted to mean a crude raw product, and that adeps lanae and lanolin, on the other hand, had been found to be a highly finished and refined wool grease.

Paragraph 290 divides wool grease into two classes, the first of which is wool grease crude and not refined or improved in value or condition and the second wool grease refined or improved in value or condition. If it be wool grease in the condition in which it is washed from the wool or the article which is commercially known as degras or brown wool grease, it belongs to the first class. If it be refined by the removal of the fatty acids and alkalies or otherwise improved in value or condition, it belongs to the second class. The imperfectly refined "neutral wool grease" and the more highly refined adeps lanae are, on the record presented, simply grades of *refined* wool grease. Under the testimony both are either refined wool greases or wool greases improved in value or condition, and therefore it can not be seriously contended that Congress had in mind only neutral wool grease when by paragraph 290 it laid a duty on wool grease refined or improved in value or condition.

The decision of the Board of General Appraisers is therefore *reversed.*